Louis MANCARI, et al., Plaintiffs,

v.

A.C. & S. CO., INC., et al., Defendants.

Superior Court of Delaware,
New Castle County.

Submitted: March 17, 1988.
Decided: March 17, 1988.

Robert Jacobs of Jacobs & Crumplar, P.A., Wilmington, for plaintiffs.

C. Scott Reese of Cooch & Taylor, Wilmington, and James D. Coleman (argued) and Bruce H. Bikin of Ballard, Spahr, Andrews & Ingersoll, for defendant Raymark Industries, Inc.

TAYLOR, Judge.

The matter before the Court is what action is appropriate with respect to the conduct of plaintiffs' attorney during the taking of the jury's verdict. The jury had been asked to render its verdict in two sections. The jury had rendered its verdict on the first section which included its verdict on punitive damages which the jury fixed at $22 million. The second section dealt with the apportionment of compensatory damages with respect to the remaining defendant, Raymark Industries, Inc. [Raymark]. The forelady of the jury had announced that it allocated certain specified percentages of fault against various defendants who had previously settled with plaintiffs and allocated 0% against Raymark. At that point, with the jury still present in the courtroom, plaintiffs' attorney stood up and made remarks in a loud and fast-speaking voice critical of the failure of the jury to allocate fault against Raymark. (Because of this unexpected turn of events, the court reporter was unable to record those remarks.) Plaintiffs' attorney then made the following statement which is on the record:

> I request the jury be polled as to whether they find Raybestos Manhattan not at all responsible for any of the damages they caused.

Defendant's attorney immediately requested a side bar at which he moved for mistrial. The Court said it would take no action with respect to the motion at that time and instructed the court clerk to poll the jury with respect to the verdict the forelady had announced. The clerk restated the announced verdict and addressed each individual juror with the question "Is that your verdict?". The first six jurors acknowledged the verdict to be correct. Juror No. 7 answered "No". At that point, the Court instructed the jury to return to the juryroom to see if they could reach a unanimous verdict. After some time, the jury returned and in response to the Court's question, the forelady indicated that the jury had reached a unanimous verdict and she stated the verdict. The percentages of fault which she reported differed from those announced earlier by reducing the percentages of fault attributed to other defendants and adding a percentage of fault attributable to Raymark of 15% with respect to the claims of the Crisconis and 17% with respect to the claims of the Temples.

The issue before the Court is whether the conduct of plaintiffs' attorney before the jury had been polled requires the granting of Raymark's motion for mistrial.

■ The first consideration is whether the conduct of plaintiffs' attorney violated the decorum expected of an attorney in a courtroom during the taking of a verdict. In the asbestos cases, particular attention has been given to avoiding any improper occurrence in the presence of the jury. Hence, the Court's continuing instruction

to the attorneys has been that the attorneys must guard against taking any action in front of the jury in which the slightest doubt exists as to its permissibility until the matter is discussed with the Court. This occurrence violates that policy. In addition to the specified direction in these cases, every attorney owes a continuing duty not to take any action which might be disruptive to court proceedings. Attorneys have a continuing duty to make sure that nothing occurs which might improperly interfere with the normal deliberative and verdict-reporting process. Isolation of the jury from any partisan influence during the deliberative and verdict-reporting process is a paramount requirement in the judicial process. Plaintiffs' attorney's actions violated the jury isolation.

■ The polling of the jury after the forelady announces a verdict is not an unusual procedure. Either attorney can request it, but the request must be made in an unemotional manner without comment and in no way characterizing the request. Its sole purpose is to ascertain whether the verdict which the forelady has announced is agreed to by all of the jurors. While it is entirely proper for an attorney to request the jury to be polled, it must not be done in such a manner as to constitute a comment on the announced verdict.

After the completion of closing statements, any attorney's action in any form which conveys a message to the jury violates the attorney's responsibility to the Court and to the system of justice. Such conduct amounts to impermissible attorney's argument to the jury after the attorney has exhausted his permissible time for argument.

■ The second consideration is what effect the conduct of plaintiffs' attorney had, if any, upon the trial. The Court has noted above that this occurred after the jury had purported to have reached a verdict and the forelady had reported what she stated to be the jury's verdict. In the polling of the jury after plaintiffs' attorney's conduct, Juror No. 7 reported that the announced verdict was not her verdict. Based on this indication of lack of unanimous agreement for the verdict, the Court requested the jury to return to the juryroom and endeavor to reach a unanimous verdict. After the jury had deliberated, it reported that it had reached a unanimous verdict and the forelady reported a different verdict from that which had been reported before plaintiffs' attorney's conduct.

The sole purpose of sending the jury back was for it to try to reach a unanimous verdict. Raymark made no request for curative instruction and in the Court's opinion, such instruction could not have overcome the impact of plaintiffs' attorney's conduct. The Court in an effort to save the long and expensive trial, sent the jury back to try to reconcile differences and bring in a unanimous verdict. If the jury returned with the same verdict as before, there would be no need for a new trial.

The only event which occurred between the time of the reporting of the initial verdict and the reporting of the modified verdict was the conduct of plaintiffs' attorney. A strong inference is that plaintiffs' attorney's conduct caused the jury to modify its verdict. The Court has noted above that it was improper for plaintiffs' attorney to convey any message to the jury prior to the discharge of the jury. The effect of the modification of the verdict was not only to establish plaintiffs' right to some compensatory damages from Raymark, but also to assure that plaintiffs would receive some punitive damages. The Court notes, without deciding, that it is probable that under the initially announced verdict plaintiffs would not have been entitled to receive punitive damages in any amount in view of the requirement stated by the Supreme Court in *Stephenson v. Capano Development Co., Inc.,* Del.Supr., 462 A.2d 1069, 1077 (1983); *Reynolds v. Willis,* Del.Supr., 209 A.2d 760, 764 (1965) that punitive damages be reasonably proportionate to compensatory damages. I find that plaintiffs' attorney's conduct caused a material change in the verdict.

■ Rule 8.4 of the Delaware Lawyers' Rules of Professional Conduct states:

It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

(d) engage in conduct that is prejudicial to the administration of justice;

The conduct and consequences described above constitute a violation of that rule. Whether the conduct was the product of an impulsive reaction or intentional, need not be addressed here.

The remaining consideration is the action to be taken by the Court. The conduct of plaintiffs' attorney prevented the completion of the taking of the jury's verdict in the format traditionally used in this Court. The result is that the only verdict which was taken in accordance with that procedure is the verdict which was tainted by the conduct. Nothing the Court could have said after that conduct would have cleansed the jurors' minds of the emotion and words which plaintiffs' attorney had improperly conveyed to the jury.

Raymark contends that the Court should enter the verdict which the forelady announced before plaintiffs' attorney's conduct. While that suggestion has certain appeal, it would create a serious flaw in the proceeding which could lead to reversal on appeal. While the forelady announced what she believed to be the unanimous verdict, the polling of the jury determined otherwise, at least at the time the jury was polled. To what extent, if any, plaintiffs' attorney's conduct affected the juror's position is not known. The Court will not speculate on that point. Surrounded by the uncertainty of the unanimity of the announced verdict, the Court declines to enter that verdict.

Raymark argues that the rendering of the jury's verdict had been completed when the forelady announced the verdict and that polling of the jury was discretionary with the Court. The practice in this State is that after the foreperson announces the verdict, the Court Clerk restates the verdict to the jury collectively and asks of the jury collectively, "So say you all?". *Cf.* 1 *Woolley on Delaware Practice* § 694 at 489. Upon receiving an affirmative response and if there has been no request to have the jury polled, the Court then directs the verdict to be entered.

In this instance, although the Clerk had restated the verdict as reported by the forelady, but before the jury responded to the question "So say you all?", the response was interrupted by plaintiffs' attorney's conduct. Therefore, the procedure for establishing the unanimity of the verdict had not been completed. The record was not ready for the entry of the verdict at that stage. With respect to the polling of a jury, I know of no instance where a judge in this State has refused a request to have the jury polled on its verdict.

In summary, plaintiffs' attorney's improper conduct which was followed by the jury reporting a different verdict from that which had been reported by the forelady prior to the conduct leads the Court to grant a mistrial.

The Court, of course, recognizes that this trial has been long and expensive and that there are many similar cases which are moving toward trial. The Court intends to bring the cases to trial as soon as possible, but each trial must be a fair trial under the law. Where, as here, the process for obtaining a fair jury verdict has suffered a serious taint which cannot be overcome by corrective instructions, that taint aborts the trial.

In the light of the foregoing considerations, defendant's motion for mistrial is GRANTED and conversely, plaintiffs' motion for entry of judgment is DENIED.